MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2015 ME 131
Docket:        Wal-14-500
Argued:        May 14, 2015
Decided:       October 13, 2015

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, and JABAR, JJ.

C.L.

v.

L.L.[1]

\*\*\*\*\*\*

IN RE A.L.

SAUFLEY, C.J.

[¶1]   C.L. sought de facto parent status regarding his ex-wife's then eight-year-old daughter, A.L.  He appeals from a judgment entered by the District Court (Belfast, *Worth, J.*) ruling on two motions that were consolidated for consideration: (A) a motion in a child protection matter concerning A.L. and (B) a post-judgment motion in C.L.'s divorce from A.L.'s mother, L.L.[2]  C.L. argues that the court made insufficient factual findings and erred in determining that C.L. was not a de facto father to A.L.  We dismiss the appeal from the order entered in the

---

[1]  Because the court consolidated motions filed in a child protection and a divorce matter for consideration, we avoid the use of full names here in compliance with the statutory directive that, with respect to child protection matters, "[a]ll proceedings . . . be closed to the public" unless otherwise ordered by the court.  22 M.R.S. § 4007(1) (2014).

[2]  C.L. filed a single document raising the two motions and listed the docket numbers for both proceedings in the document heading.

2

child protection matter and affirm the court's judgment entered in the divorce action.

## I. BACKGROUND

[¶2]  C.L. and L.L. were married and had a daughter in 2001.  Several years later, L.L. became pregnant with another man's child, and the child—A.L.—was born in August 2005.  C.L. knew that he was not A.L.'s biological father.

[¶3]  C.L. filed a complaint for divorce in April 2012 when A.L. was six years old.  In that complaint, he alleged that he was A.L.'s parent.  During the proceedings, the issue of A.L.'s paternity was raised, and C.L. asserted that he was A.L.'s de facto parent.  The court entered a divorce judgment in October 2012 that provided, by the parties' agreement, for shared parental rights and responsibilities but did not adjudicate C.L.'s claim of de facto parenthood.  Pursuant to the judgment, L.L. provided primary residence for both A.L. and the parties' biological daughter, and C.L. had rights of contact with them.  Based on the parties' agreement, the court's judgment made C.L. responsible for paying child support for both children.  The court indicated that the judgment could be reconsidered after the receipt of genetic testing results.

[¶4]  In March 2013, the Department of Health and Human Services became involved with L.L. and her children, and a safety plan was put in place that called for A.L. and her older sister to stay with C.L.  Two months later, the Department

filed a petition for a child protection order with respect to A.L. The court entered an order of preliminary protection granting the Department custody of A.L. A.L. was placed in C.L.'s home.

[¶5] The results of a paternity test confirmed that another man is A.L.'s biological father, and within a week after the preliminary protection order was issued, the court entered an order establishing that man's parenthood in the child protection proceeding. L.L. waived the opportunity for a summary preliminary hearing, and the court ordered that A.L. remain in the Department's custody and in C.L.'s home. After conducting a separate summary preliminary hearing with respect to the newly established father, the court found that A.L. would be in immediate risk of serious harm if placed in her father's care. Based on that finding, the court maintained custody with the Department, and A.L. remained in C.L.'s home.

[¶6] The court entered a jeopardy order on October 21, 2013, in which it found that A.L. was in circumstances of jeopardy with L.L. The court entered a separate jeopardy order with respect to the biological father in which it found jeopardy on the basis that he had not been able to protect A.L. from serious harm, was only beginning to form a relationship with her, and had a criminal history that raised concerns. Also on October 21, 2013, the court entered an order in the

divorce matter determining that C.L. is not A.L.'s father. The court order ended his obligation to continue paying child support for her.

[¶7] A gradual, therapeutically guided transition of A.L. to her paternal grandmother's house was then planned. C.L.—who was receiving no services from the Department other than as a foster placement where home and community treatment services were provided for A.L.—became increasingly distressed about the transition. He raised allegations about the biological father's conduct with A.L.

[¶8] In April 2014, the Department immediately relocated A.L. to her paternal grandmother's house after an incident with C.L. at a family team meeting. After a judicial review hearing held on April 14, 2014, the court ordered the child's continued placement with the grandmother.

[¶9] C.L. filed a motion for determination of de facto parent status in both the child protection and the family matter cases. A.L.'s biological father moved to intervene in the family matter case, and that motion was granted. In the child protection case, the Department objected to C.L.'s motion for de facto parent status.

[¶10] After appropriately consolidating the motions for hearing, the court held a two-day trial on C.L.'s motions in July 2014. Based on the evidence presented, the court determined, in an order entered in September 2014, that C.L. was not a de facto parent for purposes of the child protection proceeding because

he had not previously been determined to be a de facto parent in a family matter. The court further found that C.L. was not a de facto parent for purposes of the family matter, concluding that C.L. failed to meet his burden to establish that (1) he had "undertaken a permanent, unequivocal, committed, and responsible parental role in the child's life," and (2) "there are exceptional circumstances sufficient to allow the court to interfere with the legal or adoptive parent's rights." *Pitts v. Moore*, 2014 ME 59, ¶ 27, 90 A.3d 1169 (quotation marks omitted).

[¶11]  In support of its judgment, the court made extensive findings by clear and convincing evidence, *see id.*, all of which are supported by competent evidence in the record.  The court's findings, taken together, demonstrate that, although C.L. loves A.L., C.L. is unable to fulfill a responsible parental role for A.L.  When she lived with C.L., A.L. lacked a routine and structure, suffered from chronic lice, appeared at school dirty and tired, came to supervised visits hungry because there was no food at C.L.'s home, and wore the same clothes for days.  C.L.'s housing was crowded with stored items and in a state of disrepair, he smoked indoors, and his twelve-year-old daughter would be out of the home for days "house surfing" at friends' homes without C.L. knowing where she was.  Caseworkers and other professionals often found it difficult to reach C.L., and he declined to address any of the identified problems or improve his ability to take care of A.L.

6

[¶12]  C.L.'s inability to function as a responsible parent, his unwillingness to learn the necessary parenting skills, and the ensuing chaos in the home all harmed A.L.  The court found that A.L.'s behavior at school was so serious while she was staying at C.L.'s home that she repeatedly had to go to a "time-out room" to de-escalate.  Even at a young age, she needed one-on-one support at school, and C.L. did not assist in upholding the rules and structure that the school sought to provide, once yelling at the school principal in front of A.L.  C.L. refused to meet with A.L.'s biological father as recommended by service providers and would not encourage A.L. to attend visits with her father or show support for the reunification efforts that were part of A.L.'s case plan.  After A.L. moved to her grandmother's home, C.L. inappropriately raised adult concerns with her at his visits, asking A.L. how often she visited with her biological father and telling her that she should not be seeing her father more often than she was seeing him.

[¶13]  The court found that, although A.L. expressed a desire to live with "Daddy [C.L.]," she also said that she wanted to live with her grandmother, her father, and her mother.  C.L. told the Department's caseworker, "that little girl would never turn against me," and said that he had been very nice but things could take a different route if things did not go right in court, and that he was "willing to go to jail" for A.L.

[¶14]   In A.L.'s placement with her grandmother, there are no safety concerns.  The grandmother has followed the advice of professionals, including school staff, and the child has flourished with the reasonable routine and structure of the home.  A.L. is clean; is better able to control her behavior, including at school; has made significant academic gains; and is more rested, happy, and self-assured.

[¶15]   Based on its findings, the court determined that C.L. had failed to establish de facto parenthood for purposes of the family matter.  Specifically, the court determined that C.L. had not shown that he had undertaken a permanent, unequivocal, committed, and responsible parental role in her life and that exceptional circumstances justified an intrusion on the parental rights of L.L. and the biological father.  *See id.*   The court maintained A.L.'s placement with her grandmother.

[¶16] C.L. moved for the court to make additional findings of fact, primarily regarding his role in A.L.'s upbringing before the child protection proceeding began, and to amend the order to determine that he is a de facto parent.  The court denied his motion and entered an amended order only to correct clerical errors.  C.L. appealed to us.

## II. DISCUSSION

A.    Child Protection Matter

[¶17]   Pursuant to the chapter of Title 22 that governs child protection proceedings, "[o]rders entered under this chapter under sections other than section 4035, 4054 or 4071 are interlocutory and are not appealable." 22 M.R.S. § 4006 (2014). Because of this statutory provision crafted by the Legislature, we do not apply "the traditional judge-made exceptions to the final judgment rule" in child protection cases "absent any constitutional infirmity in the statute." *In re L.R.*, 2014 ME 95, ¶ 9, 97 A.3d 602.

[¶18]  C.L. does not raise any constitutional infirmity in the child protection statute.   He contends only that the court misapplied the common law de facto parent doctrine. Accordingly, the appeal from the judgment in the child protection matter is interlocutory, and we dismiss it.[3] *See* 22 M.R.S. § 4006; *In re L.R.*, 2014 ME 95, ¶ 9, 97 A.3d 602.

B.    Family Matter

[¶19]  With respect to the judgment entered in the divorce case, from which C.L. properly appealed, *see* 14 M.R.S. § 1901 (2014), C.L. contends that the court misapplied the standard for determining de facto parenthood by failing to take into

---

    [3]  Given the interlocutory nature of this appeal, we do not opine on whether a de facto parenthood could be established through a child protection case.

account the evidence of his involvement as a parent during the years of A.L.'s life that preceded the child protection proceeding. He further argues that "exceptional circumstances" warrant a determination of de facto parenthood.

[¶20] We review the court's findings of fact for clear error and its conclusions of law de novo. *Pitts*, 2014 ME 59, ¶ 9, 90 A.3d 1169. To obtain parental rights as a de facto parent, an individual must show that (1) "he or she has undertaken a permanent, unequivocal, committed, and responsible parental role in the child's life," and (2) "there are exceptional circumstances sufficient to allow the court to interfere with the legal or adoptive parent's rights." *Id.* ¶ 27 (quotation marks omitted).[4]

[¶21] Here, the court found that C.L. failed to meet both parts of this test. With respect to the first prong, the court found that C.L. did not occupy a responsible parental role with respect to A.L. Specifically, the court found that he had failed and refused to set necessary limits to assist A.L. at school, had not provided adequate housing or food, had not enabled A.L. to maintain basic hygiene, and had declined to stop smoking in the home where A.L. resided with him. Although most of these findings concern C.L.'s most recent conduct, they

---

[4] This common-law test will soon be superseded because the Legislature adopted the Act to Update Maine's Family Law. *See* P.L. 2015, ch. 296, § A-1 (adopting the Maine Parentage Act, which includes a subchapter regarding de facto parentage) (effective July 1, 2016) (to be codified, in relevant part, at 19-A M.R.S. § 1891).

support the court's determination that C.L. had failed, as of the time of hearing, to undertake a "permanent, unequivocal, committed, and *responsible* parental role in the child's life." *Id.* (emphasis added) (quotation marks omitted). We therefore affirm the court's determination that he failed to meet the first required element for establishing de facto parenthood.

[¶22] The creation by a court of an additional, legally recognized parental relationship with a child permanently alters the relationships among the child and the other parents. Introducing another adult into the group of adults who will care for and make decisions about the child should not occur in instances where that adult is unable to act as a responsible parent. C.L.'s relationship with A.L. does not "entitle" him to de facto parenthood if he cannot, or will not, undertake a permanent responsible parental role in her life.

[¶23] Because we affirm the court's finding that C.L. failed to establish the first element of de facto parenthood, we do not reach or review the court's finding that C.L. failed to satisfy the second necessary element by establishing "exceptional circumstances" sufficient to allow the court to interfere with the legal parents' rights. *Id.* Nor is it necessary for us to reach the biological father's equitable arguments against a determination that C.L. is a de facto parent.

The entry is:

> Appeal from child protection order dismissed. Judgment in family matter affirmed.

---

**On the briefs:**

Sean Ociepka, Esq., Belfast, for appellant C.L.

Janet T. Mills, Attorney General, and Meghan Szylvian, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee State of Maine

Logan E. Perkins, Esq., Silverstein-Law, P.A., Bangor, for appellee biological father of A.L.

**At oral argument:**

Sean Ociepka, Esq., for appellant C.L.

Meghan Szylvian, Asst. Atty. Gen., for appellee State of Maine

Logan E. Perkins, Esq., for appellee biological father of A.L.